IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JACOB N. JONES and<br>PEGGY C. JONES,<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE FARM INSURANCE<br>COMPANY, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 2:05-cv-01119-WKW<br>)<br>)<br>)<br>)<br>) |

## REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

NOW COMES Defendant Ron Nall (hereinafter "Nall") pursuant to the Court's Order dated August 10, 2006, and submits his Reply to PLAINTIFFS' RESPONSE TO DEFENDANT NALL'S MOTION TO DISMISS (hereinafter "Response") and as grounds in support thereof, Defendant Nall would state as follows:

Plaintiffs exhaust almost five pages of their Response arguing Nall's status as an agent or independent contractor for State Farm Fire and Casualty Company (hereinafter "State Farm").[1] However, Nall's status is completely irrelevant to the issues presented in his Motion to Dismiss. Nall's Motion to Dismiss is based upon the fact that Plaintiffs' Complaint and Plaintiffs' subsequent Response to Defendant Nall's Motion to Dismiss are void of any fact which will support a claim against Nall, regardless of whether he is an employee of State Farm or an independent contractor.

---

[1] Actually, the issue would be whether Nall was an <u>employee</u> of State Farm as opposed to an independent contractor, self-employed as an insurance agent for State Farm. Under either scenario -- employee or independent contractor -- Nall <u>could be</u> a legal agent rendering State Farm vicariously liable for his conduct. Thus, the discussion whether Nall is an "agent" or an "independent contractor" is pointless.

Regardless of what his status is, he had to have done something to open himself up to liability and to make State Farm vicariously liable assuming he was an agent, acting within the scope of his agency, at the time of his wrongful conduct. In a classic "cart before the horse" argument, Plaintiffs say there is a jury question on Nall's agency. However, that issue does not matter if, as Nall argues, there is no cause of action against him. Plaintiffs' Response shows that there is no cause of action against Nall. Plaintiffs' Complaint alleged that the Plaintiffs relied upon Nall when they procured insurance and that Nall was guilty of "bad faith" because State Farm did not pay Plaintiffs more than the limits of the policy. After pointing out in his Motion to Dismiss that Nall did not deal with the Plaintiffs when they procured the policy, Plaintiffs said in their Response to State Farm's Objection to Plaintiffs' Motion for Leave to Amend the Complaint that they sued Nall because they thought Nall had bought Mark King's agency and that Nall was liable under a theory of successor liability for the acts of King. That theory was not alleged in Plaintiffs' Complaint. The only claims against Nall were Counts II, III, V and VI.[2]

### A. THERE CAN BE NO BAD FAITH AGAINST NALL AS HE IS NOT A PARTY TO THE CONTRACT.

As is briefed fully in Defendant Nall's Motion to Dismiss and incorporated herein, Alabama jurisprudence has clearly established there can be no bad faith claim against a person not a party to the insurance contract. Though attempts have been made to expand the tort out of the insurance context, the Alabama Supreme Court and federal courts construing Alabama law have held true to

---

[2] Count I alleged breach of contract against State Farm; Count II alleged negligent failure to procure insurance against Nall and State Farm; Count III alleged bad faith against Nall and State Farm; Count IV alleged fraud against State Farm; Count V alleged negligent and wanton failure to issue a policy of insurance against Nall and State Farm; and Count VI alleged wanton failure to procure a policy of insurance against Nall and State Farm.

the concept that bad faith must be based on an **insurance contract**. *See Brown-Marx Associates, Ltd. v. Emigrant Savings Bank*, 527 F.Supp. 277 (N.D. Ala. 1981); *Tanner v. Church's Fried Chicken*, 582 So.2d 449 (Ala. 1991). In fact, the Alabama Supreme Court very plainly stated the "existence of an insurance contract between the parties is a **threshold requirement** in a bad faith claim." *Aplin v. American Security Ins. Co.*, 568 So.2d 757, 758 (Ala. 1990) (emphasis added) (quoting *Tyson v. Safeco Ins. Co.*, 461 So.2d 1308, 1311 (Ala. 1984)). It has been further established that the plaintiff bears the burden in a bad faith case to prove the existence of an insurance contract ***between the parties.*** *National Security Fire & Cas. Co. v. Bowen*, 417 So.2d 179 (Ala. 1982) (emphasis added).

The policy of insurance made the basis of this suit is a contract entered into between Plaintiffs and State Farm. Regardless of whether Nall is labeled an agent or independent contractor, the fact remains, there is NO contract between the Plaintiffs and Nall. Nall is not and was not a party to that contract, as evidenced by the fact that he was not even associated with State Farm at the time the policy was originally procured. This is further evidenced by the fact that Plaintiffs originally contracted with State Farm through Mark King and King's retirement had no effect whatsoever on Plaintiffs' policy. Rather, Plaintiffs' policy was merely reassigned to another agent, Nall, to service. And again, Plaintiffs' contract did not terminate when Nall advised he could no longer service the policy due to conflicts caused by this suit; rather, the policy was simply assigned to another agent to service. Plaintiffs' policy has been serviced by three separate agents thereby solidifying the fact that the contract at issue is one between the Plaintiffs and State Farm and has nothing to do with whichever agent is assigned thereto.

Plaintiffs have failed to satisfy even the first requisite element of a bad faith claim as there is no evidence of any contract between Plaintiffs and Defendant Nall and no allegations of a breach of said contract. The only contract at issue is the insurance contract entered into between the Plaintiffs and State Farm. Nall is not a party to that contract and is, therefore, due to be dismissed from Count Three of Plaintiffs' Complaint.[3]

### B.   RON NALL WAS NOT INVOLVED IN THE PROCUREMENT OF THE POLICY.

Plaintiffs argue that Nall procured yearly "renewal" policies for them but offer no evidence in support of this baseless allegation. The contract of insurance was entered into between the Plaintiffs and State Farm. The contract specifically states that the contract will renew automatically each year unless the insured or State Farm takes action for it not to renew. The Plaintiffs' renewal notices were sent to them directly from State Farm, not Ron Nall. (Affidavit of Bill Lovell, attached hereto as Exhibit "A"). Nall did not engage in any activity to renew Plaintiffs' policies each year. (Affidavit of Nall, attached hereto as Exhibit "B"). State Farm makes the decision whether it will renew a policy and the renewal notices and policies are issued directly from State Farm to the insured. (Exhibit "A"). In fact, renewal is automatic unless the policyholder cancels or State Farm non-renews. (See policy language, attached hereto as Exhibit "C"). Defendant Nall was not a party to the renewal of the policies and he did not discuss the policy of insurance with the Plaintiffs until after the fire. (Exhibit "B"). Plaintiffs point to no evidence to establish that Nall had any involvement whatsoever in the renewal of their policies from year to year.

---

[3] Plaintiffs' arguments relating to their 40% discount is wholly irrelevant to any fact at issue in this litigation. The allegations of Plaintiffs' Complaint are void of any reference to this discount or the theft claim and, as such, Defendant Nall sees no reason to waste the Court's time in response thereto.

Plaintiffs also make mention of the fact that the October 2000-2001 Declarations Page attached as Exhibit "A" to their Response references the Ron Nall Agency which, Plaintiffs contend, contradicts Nall's affidavit. Plaintiffs contend this is evidence that Nall <u>was</u> involved in renewals. However, Plaintiffs fail to notice that the Declarations Page was prepared on January 17, 2005, (indication on the bottom left corner) when the policy was being serviced by Nall. Lovell's affidavit explains that the agent servicing the policy at the time the Declarations Page is printed is the agent printed on the Declarations Page. Nall did not take over servicing Plaintiffs' policy until 2001. Furthermore, Nall was not involved in any facet of procurement of any of Plaintiffs' policies from their acquisition of same to present.

Plaintiffs have offered no facts to support their allegations that Nall was involved in the procurement of their policies. By Plaintiffs' own admission, they obtained coverage through Mark King and it was King who allegedly performed the purported miscalculations which Plaintiffs allege caused them to be under-insured for the loss suffered by the July 28, 2004, fire.

Ron Nall was not a State Farm agent at the time Plaintiffs obtained insurance coverage, nor was he an agent when the stated value calculations were allegedly made in 1997. Plaintiffs do not allege that Nall made the calculations in 1997; they say that he produced to them -- after their loss -- a calculation that had been made back in 1997 -- before Nall became their agent. Nall did not participate in the origination of the Joneses' homeowner's insurance policy, nor did he participate in any valuation calculations. Furthermore, he has never discussed the provisions of the insurance policy with the Plaintiffs prior to their July 28, 2004, fire claim.

## CONCLUSION

Defendant Nall is due to be dismissed from all claims made by Plaintiffs in their Complaint. Count III alleging bad faith is, by case law, limited to claims between the insured and the insurer. There is no legal basis for maintaining any allegation in this count against Nall and, as such, Defendant Nall is due to be dismissed from Count III. Further, Defendant Nall is due to be dismissed from Counts II, V and VI of Plaintiffs' Complaint as he was not involved in any aspect of the procurement or issuance of the policy at issue. He made no representations to Jones when the policy was procured and cannot be found negligent or wanton in activities in which he never participated; therefore, Counts II, V and VI are due to be dismissed as to Defendant Ron Nall. Plaintiffs' Response fails to address the issues raised in Nall's Motion to Dismiss and fails to present any issue of fact upon which a claim against Nall may be made. As such, Defendant Ron Nall is due to be dismissed from Counts II, III, V and VI of the Complaint.

**RESPECTFULLY SUBMITTED**, this the 24th day of August, 2006.

/s/ Micheal S. Jackson
**MICHEAL S. JACKSON [JACKM8173]**
**MICHAEL B. BEERS [BEERM4992]**
Attorneys for Defendants Ronald Nall and
State Farm Fire and Casualty Company

**OF COUNSEL:**

BEERS, ANDERSON, JACKSON,
 PATTY, VAN HEEST & FAWAL, P.C.
P. O. Box 1988
Montgomery, Alabama 36102-1988
(334) 834-5311
(334) 834-5362 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2006, I electronically filed the foregoing REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Marcus Jones, Esq. | Brian P. Winter, Esq. |
| LAW OFFICE OF MARCUS JONES | ADCOX WINTER, LLP |
| 2416 Walking Fern Lane | 611 Helen Keller Blvd. |
| Hoover, Alabama 35244 | Tuscaloosa, AL 35404 |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

/s/ Micheal S. Jackson
**OF COUNSEL**

## **AFFIDAVIT**

STATE OF ALABAMA
JEFFERSON COUNTY

BEFORE me, the undersigned authority, personally appeared Bill Lovell, who, being by me first duly sworn, deposes and says as follows:

1. My name is Bill Lovell and I have personal knowledge of the facts contained in this affidavit.

2. I am a Section Manager with State Farm Fire and Casualty Company and manage the personal lines underwriting department for the Birmingham Operations Center of State Farm, in which Andalusia, Covington County is included, thus, I have knowledge of State Farm policies and procedures as they pertain to the issues herein.

3. Per the contract language, the policy is automatically renewed unless State Farm decides not to renew and sends notice thereof or the policyholder cancels.

4. State Farm's Underwriting Department makes the determination whether an insurance policy is non-renewed.

4. Renewal notices are automatically generated and sent directly to the insured.

5. I certify that I was the custodian of records in January 2005, and certified the Declarations pages attached as Exhibits A and C to Plaintiffs' Response to Defendant Nall's Motion to Dismiss.

6. In November 2004, Nall Agency Inc. was assigned the policy of Jacob and Peggy Jones.

7. The indication of Nall Insurance Agency, Inc. does not imply Nall Insurance Agency, Inc. handled that policy during the policy period on the declarations page.



8. The computer system includes the current agent's name, when a duplicate of a declarations page is printed.

9. The original declarations page, which is mailed to the insured, will indicate the agency assigned to their policy during the period covered by the policy.

DONE this the 24 day of August, 2006.

_____
Bill Lovell

**STATE OF ALABAMA**
**JEFFERSON COUNTY**

SWORN TO AND SUBSCRIBED before me this the 24 day of August, 2006.

_____
NOTARY PUBLIC
My Commission Expires:

## AFFIDAVIT

STATE OF ALABAMA
COVINGTON COUNTY

BEFORE me, the undersigned authority, personally appeared Ron Nall, who, being by me first duly sworn, deposes and says as follows:

1. My name is Ron Nall and I have personal knowledge of the facts contained in this affidavit.

2. I was not involved in the procurement of the homeowner's insurances policies from State Farm to Jacob and/or Peggy Jones.

3. I did not originate any of the insurances policies issued by State Farm to Jacob and/or Peggy Jones.

4. To my knowledge, I have not discussed the provisions of homeowner's policy issued by State Farm and upon which this lawsuit is based with either Jacob Jones or Peggy Jones prior to their filing a fire claim in July 2004.

5. I had no involvement in the renewal of the homeowner's insurance policy issued by State Farm to Jacob and/or Peggy Jones.

6. I had no involvement in the renewal notices which were mailed to the Jacob and/or Peggy Jones prior to the expiration of their homeowner's policy with State Farm.

7. I had no control over whether the Joneses' policy was renewed by State Farm or the terms of any renewal.

DONE this the 24th day of August, 2006.

_____
Ron Nall

STATE OF ALABAMA
COVINGTON COUNTY

SWORN TO AND SUBSCRIBED before me this the 24th day of August, 2006.

EXHIBIT B

_____
NOTARY PUBLIC
My Commission Expires: 12-26-2006

| Policy Number | DECLARATIONS PAGE COVERAGE SUMMARY 01-17-2005 |
|---|---|
| 01-10-9842-5 | STATE FARM FIRE AND CASUALTY COMPANY<br>100 STATE FARM PARKWAY, BIRMINGHAM, AL 35297-0001<br>A STOCK COMPANY WITH HOME OFFICES IN BLOOMINGTON, ILLINOIS |



**NAMED INSURED**          1658-9732

JONES, JACOB N & PEGGY SUE
30638 STRAUGHN SCHOOL RD
ANDALUSIA, AL 36420-5519

## Homeowners Policy - Special Form 3

**Automatic Renewal** - If the **policy period** is shown as **12 months**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

**Policy Period:** 12 MONTHS
**Effective Date:** OCT 08, 1996
**Expiration Date:** OCT 08, 1997

The policy period begins and ends at 12:01 A.M. standard time at the residence premises.

Location of Residence Premises
  SAME AS INSURED'S ADDRESS

| Coverages & Property | Limits of Liability | | |
|---|---|---|---|
| **SECTION I** | | | |
| A DWELLING | up to | $ | 91,100 |
| DWELLING EXTENSION | | $ | 9,110 |
| B PERSONAL PROPERTY | | $ | 63,770 |
| C LOSS OF USE | | ACTUAL LOSS SUSTAINED | |
| **SECTION II** | | | |
| L Personal Liability (Each Occurrence) | | $ | 100,000 |
|   Damage to Property of Others | | $ | 500 |
| M Medical Payments to Others (Each Person) | | $ | 1,000 |

**Inflation Coverage Index:** 128.3
**Deductibles - SECTION I**
ALL LOSSES          $ 1,000

In case of loss under this policy, the deductibles will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply - refer to your policy.

**Policy Premium**          $ 852.00

Discounts Applied

Forms, Options, & Endorsements
SPECIAL FORM 3          FP-7923
REPLACEMENT COST - CONTENTS          OPTION RC
AMENDATORY ENDORSEMENT          FE-7201.1

——— Other limits and exclusions may apply - refer to your policy ———

PREPARED
JAN 17, 2005
JG
FP-7001.4C

Your policy consists of this page, any endorsements and the policy form. Please keep these together.

COUNTERSIGNED          2005

BY _____  AGENT

KING, MARK A (MARK)          SF-Jones
334-222-3107          SF-00294

**EXHIBIT C**

or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

**SF-Jones**
SF-00314                                    FORM 3

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

  (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

  (b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

  a. sign and deliver all related papers;

  b. cooperate with us in a reasonable manner; and

  c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

  a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

  b. **insured** includes:

    (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

    (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

The following Optional Policy Provisions are subject to all the terms and provisions of this policy, unless otherwise indicated in the terms of the option.

Each Optional Policy Provision applies only as indicated in the **Declarations**.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization named in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

19

FORM 3

SF-Jones
SF-00315