## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| JACOB N. JONES and | ) | |
| PEGGY C. JONES, | ) | |
| | ) | |
|    Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CASE NO.: 2:05-cv-1119-WKW** |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, et al., | ) | |
| | ) | |
|    Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come now the Plaintiffs, Jacob Jones and Peggy Jones, by and through their undersigned counsel, and pursuant to this Honorable Court's Order of February 26, 2007, hereby Respond to Defendants' Motion for Summary Judgment. On October 14, 2005, Plaintiffs Jacob and Peggy Jones filed a Complaint against Defendants alleging (1) Breach of Contact, (2) Negligent Failure to Procure Insurance, (3) Bad Faith, (4) Fraud, (5) Negligent and Wanton Failure to Issue a Policy of Insurance, and (6) Wanton Failure to Procure a Policy of Insurance. After reviewing Defendants' Motion for Summary Judgment, Plaintiffs concede that Defendants' Motion as to Plaintiffs' claims for Breach of Contract, Bad Faith, Fraud, Wanton Failure to Issue a Policy of Insurance, and Wanton Failure to Procure a Policy of Insurance is well taken and is due to be granted.

Conversely, Defendants' Motion for Summary Judgment as to Plaintiffs' claims for Negligent Failure to Procure Insurance and Negligent Failure to Issue a Policy of Insurance (hereinafter collectively referred to as "negligence claims") is due to be denied. As to Plaintiffs' negligence claims, there are numerous genuine issues of material fact that preclude summary judgment in favor of Defendants, and Defendants' Motion for Summary Judgment is not due to be granted as a matter of law. In support of their Response, Plaintiffs state as follows:

I.    **STANDARD FOR DENYING A MOTION FOR SUMMARY JUDGMENT.**

The standard for granting or denying a motion for summary judgment is well settled. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Blue Cross & Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1351 (11th Cir. 1998).  On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the *nonmoving party*. Does v. Covington County School Bd. of Educ., 930 F.Supp. 554 (M. D. Ala. 1996)(quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248 (see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir.1989)).  In a negligence action, the questions of (1) whether a breach of duty has occurred, (2) whether the breach was the proximate cause of the injury, and (3) the amount of damages suffered are all ***questions of fact*** for a jury to decide.  Prickett v. United States, 111 F. Supp. 2d 1191, 1195 (M.D. Ala. 2000); Bowden v. Wal-Mart Stores, Inc., 124 F. Supp. 2d 1228, 1234 (M.D. Ala. 2000); Wolff v. Allstate Life Insurance Company, 985 F.2d 1524, 1532 (11th Cir. 1993).   As will be shown below, there are genuine issues of material fact as to each of these elements.

II.    **CONTESTED AND DISPUTED MATERIAL FACTS.**

A.    ***State Farm is liable for the negligence of their agent, and Mark King is a general agent of State Farm Insurance.***

From 1977 through his retirement in 2001, Mark King was an agent for State Farm Insurance (King Depo., p. 8, L. 9-10; p. 76, L. 16-17).  For his first two years, Mr. King was a trainee-agent. (King Depo., p. 8, L. 11-12).  In 1979, King became a full agent. (King Depo., p.8, L.

9-10, 16-17).  State Farm sponsored King for his insurance license. (King Depo., p. 55, L. 14-16).

During his tenure as a State Farm agent, King sold home, health, life and auto insurance for State

Farm. (King Depo., p. 9, L. 2-4).   As a State Farm agent, Mark King had to right to bind the

company. (King Depo., p. 9, L. 11-16). In fact, in order to become and remain a State Farm agent,

King was required to follow State Farm's rules and regulations. (King Depo., p. 26, L. 10-19).

State Farm provided King with the rules and regulations. (King Depo., p. 29, L. 8-14).  King was

tested on the rules and regulations. (King Depo., p. 29, L. 17-19).  King was required to undergo

periodic training by State Farm so he could follow the State Farm rules. (King Depo., p. 29, L. 20 to

p. 30 L. 1).

    As a State Farm agent, King was compensated by a commission for each policy he sold to

an insured. (King Depo., p. 24, L. 5-24).  As a State Farm agent, King was compensated by State

Farm on each policy that was renewed by State Farm. (King Depo., p. 70, L. 20 to p. 71, L. 2).

King had a State Farm sign in front of his office. (King Depo., p. 26, L. 20-22).  King advertised on

the radio as a State Farm agent. (King Depo., p. 26, L. 23 to p. 27, L. 6).  King distributed State

Farm promotional and advertising material such as pencils, pens, and key chains. (King Depo., p.

25, L. 7-14).  King gave away State Farm road atlases. (King Depo., p. 25, L. 14-15).   King

provided State Farm calendars. (King Depo., p. 25, L. 16-18).

    When King wrote a policy for State Farm, he signed the policy and delivered it to the

insureds. (King Depo., p. 30, L. 2-17).  King wrote checks for State Farm on State Farm drafts.

(King Depo., p. 32, L. 5-9).  King accepted payments for State Farm. (King Depo., p. 32, L. 10-12).

King created automatic drafts from insureds' checking accounts for State Farm. (King Depo., p.32,

L. 13-17).  King reported to State Farm's district manager on a regular basis.  (King Depo., p. 32, L.

22 to p. 33, L. 7).  The State Farm district manager reviewed King's books, ledgers, and accounts.

(King Depo., p. 33, L. 8-11).

King participated in State Farm's "Good Neighbor Service," providing that he or State Farm personnel could be reached twenty-four (24) hours per day, seven (7) days per week, three hundred, sixty-five (365) days per year. (King Depo., p. 34, L. 12-22).    King's employees also had the authority to bind the company. (King Depo., p. 55, L. 22 to p. 56, L. 2).    King was required to use State Farm's forms and applications. (King Depo., p. 56, L. 9-10).    King routinely countersigned State Farm's insurance policies, as a habit, custom, and practice. (King Depo., p. 63, L. 3-15).

### 1.  King had a duty to accurately measure State Farm insured homes.

Jacob and Peggy Jones contacted King, as their State Farm agent, to procure casualty insurance on their property located at 30368 Straughn School Road, Andalusia, Alabama 36421. (Jacob Jones Depo., p. 20, L. 1-5)(King Depo., p. 22, L. 2-3).  Mr. Jones asked State Farm, by and through King, to insure his home for the replacement value, and Mr. Jones was lead to believe that his home would be insured to cover the replacement value of his home.  (Jacob Jones Depo., p. 25, L. 12-23; p. 56, 17-21).

As a State Farm agent, King admitted that he had a duty to accurately measure and calculate the square footage of the Jones' home. (King Depo., p. 17, L. 4 to p. 19, L. 9).  King testified that State Farm's policies and procedures required him to measure and compute the square footage of the Jones' home. (King Depo., p. 11, L. 5-9; p. 17, L. 9-17).  King further testified that he had that duty and assumed that duty during his tenure as the State Farm agent of record and servicing agent for the Joneses. (King Depo., p. 11, L. 9 to p. 13, L. 2).

On or around 1971, the Joneses built their house on Straughn School Road (Jacob Jones Depo., p. 20, L. 9-11).  The Joneses made several additions to their home over the years. (Peggy Jones Depo., p. 36, L. 9 to p. 41, L. 8).  In approximately 1989 or 1990, the Joneses enclosed and converted the carport and storage room into a playroom. (Jacob Jones Depo., p. 48, L. 12-16)(Peggy Jones Depo., p. 38, L. 3-14).  After this addition was completed, the total square footage of the

Jones' home was 2840 square feet.  (Jones Affidavit, attached hereto as Exhibit A) (Tax Records, attached hereto as Exhibit B).

### 2.  King undertook his duty to accurately measure the Jones' home.

During his time as the State Farm agent of record for the Joneses, King was made aware that the Joneses had enclosed their carport. (King Depo., p. 57, L. 22 to p. 58, L. 14).  In 1994, King inspected the Jones' home because State Farm required a mandatory re-inspection in response to Hurricane Opal. (King Depo., p. 11, L. 12 to p. 13, L. 5).  In fact, according to Defendants' Motion for Summary Judgment, King conducted mandatory reinspections on all dwellings in 1994 at State Farm's directive. (Def. MSJ, p. 6).  King testified that if he went out to inspect the addition to the Jones' home, that he is "sure" would have measured it and added it to the square footage of the house. (King Depo., p. 59, L. 1).  However, King never provided the Joneses with any written estimate of the home. (King Depo., p. 59, L. 18 to p. 60, L. 6).  King did not send the Joneses any document specifying the square footage of their home (King Depo. p. 60, L. 3-6).  There is no computer printout of the square footage of the home. (King Depo., p. 61, L. 4-8).  King never told the Joneses that they needed to independently verify the replacement value of their house. (King Depo., p. 78, L. 19-21).  Neither King nor Nall were aware of any document from State Farm advising Jones of the square footage of their home. (King Depo., p. 60, L. 3-6) (Nall Depo., p. 164, L. 1-12).

King was not allowed to over-insure a home. (King Depo., p. 78, L. 7-11).  State Farm has a policy against over-insuring homes. (King Depo., p. 78, L. 12-18).  However, State Farm routinely provided Option ID, which automatically increases the amount of insurance when there is a discrepancy between State Farm's replacement cost estimate and the insured's estimated replacement cost, to homeowners as a part of their insurance policy. (King Depo., p. 61, L. 16 to p.

62, L. 7)(Nall Depo., p. 145, L. 3-14). Homeowners do not have to pay extra for Option ID. (King Depo., p. 61, L. 21 to p. 62, L. 2)(Nall Depo., p. 145, L. 3-8).

As noted above, according to the Defendants, King inspected the Jones' home in 1994. (King Depo., p. 11, L. 12 to p. 13, L. 5)(Def. MSJ, p. 6). State Farm required King to use a computer program to determine the replacement value of a home. (King Depo., p. 37, L. 1-20). Prior to the use of the computer program, State Farm required King to use a slide rule in determining the replacement value of a home. (King Depo., p. 40, L. 13 to p. 41, L. 2). King had no choice but to use these tools required by State Farm in determining the replacement value of a home. (King Depo., p. 37, L. 9-20). King relied on these tools provided by State Farm. (King Depo., p. 37, L. 18-20). King expected his customers, like the Joneses, to be able to rely on him. (King Depo., p. 38, L. 12 to p. 40, L. 2). Jacob Jones relied upon King's judgment and expertise. (Jacob Jones Depo., p. 55, L. 4-22).

King inspected the Jones' home <u>again</u> in 1997. (King Depo., p. 14, L. 22 to p. 15, L7; p. 22, L. 11-16) (Jacob Jones Depo., p. 35, L. 1-2). ***There is a genuine dispute of material facts as to this inspection.*** State Farm asserts that the inspection performed by King in 1997 was a "quality inspection" and no measurements were required to be taken. (Defendants' MSJ, p. 7). Conversely, Peggy Jones testified that King measured the home in 1997. (Peggy Jones Depo., p. 25, L. 11 to p. 26, L 10). King, himself, could not remember whether or not he measured the home in 1997. (King Depo., p 15, L. 14-20). Since there is no affirmative evidence to contradict Mrs. Jones' testimony that King measured the house during the 1997 inspection, there is substantial evidence that King did measure the home and calculated the square footage of the home in 1997 based on those measurements. (Peggy Jones Depo., p. 25, L. 11 to p. 26, L 10).

In 1994 and 1997, King determined that the square footage of the home to be 2128 square feet. (King Depo., p. 20, L. 20-23). Based upon King's measurement and calculation of square

footage, King utilized State Farm's factor of construction cost per square foot to determine the replacement cost of the home in 1997. (King Depo., p. 28, L. 15 to p. 29, L. 7; p. 38, L. 2-11; p. 55, L. 8-13). According to the policy issued, based upon Kings mis-measurements and miscalculations, was $116,856.00. King admits that the square footage of a home is needed to accurately calculate the replacement value of a home, and that an incorrect calculation of the square footage of a home could negatively impact the replacement value of the home. (King Depo., p. 18, L. 20 - p. 19, L. 9).

**3.    King breached his duty to accurately measure the home.**

Unfortunately, King did not measure and/or calculate the square footage of the home correctly. (Exhibit A)(Exhibit B).  In fact, the Jones' home contained 2840 square feet. (Exhibit A)(Exhibit B).  This is verified by tax records. (Exhibit A)(Exhibit B).  King testified that he had made mistakes as an agent in the past.  (King Depo., p. 50, L. 22 to p. 51, L. 17).  King testified that if he has made a mistake, then State Farm should make things right. (King Depo., p. 19, L. 18 to p. 20, L. 17).

**B.    *Nall is a general agent of State Farm Insurance*.**

In 2001, after Mark King retired as a State Farm agent, Ron Nall became the Jones' new State Farm agent. (Nall Depo., p. 84, L. 8 to p. 86, L. 10).  Unlike King, who admitted that he was an agent for State Farm, Nall did not believe that he was an agent of State Farm. (Nall Depo., p. 20, L. 2-6).  Rather, Nall believed that he was an "independent contractor agent." (Nall Depo., p. 20, L. 4-6).  Nall has been a full "independent contractor agent" since June 1, 2002. (Nall Depo., p. 39, L. 13-16).  According to Nall, this means that he is an "independent party in a contract with State Farm Insurance though the Contract and that he will abide by those contracts and agreement to that contract and sell and service business through State Farm Insurance." (Nall Depo., pp. 40, L. 21 to p. 41, L. 5).

Despite Nall's belief, the undisputed facts as provided by Nall, himself, reflect that Nall was a general agent of State Farm. Nall admitted that from June 1 2001, when he became a trainee agent, until after the fire, he was the State Farm "agent of record" and "servicing agent" for the Joneses, and he received a renewal commission on each policy. (Nall Depo., pp. 143, L. 11-15; p. 171, L. 6-13). Nall has been trained as a State Farm agent. (Nall Depo., p. 52, L. 19-22). Nall followed State Farm's Fire Underwriting Guide. (Nall Depo., p. 31, L. 19 to p. 36, L. 21). Nall had authority to bind coverage. (Nall Depo., p. 37, L. 9-18). Nall displayed a State Farm sign in front of his office. (Nall Depo., p. 21, L. 4-10; p. 43, L. 5-9). Nall provided insureds and prospective insureds with State Farm marketing items such as pens, pencils, key chains, Koozies, fliers, brochures. (Nall Depo., pp. 43, L. 15 to p. 46, L. 12). Nall sends State Farm birthday cards to clients. (Nall Depo., p. 45, L. 4-8). All of the items which Nall provides are State Farm approved. (Nall Depo., p. 43, L. 19 to p. 44, L. 3). In fact, Nall's business card says State Farm on it. (Nall Depo., p. 60, L. 7-10). Nall admits that he represents himself as an insurance agent for State Farm Insurance to the public. (Nall Depo., p. 53, L. 21-22). He writes checks for State Farm. (Nall Depo., p. 61). He is listed as a State Farm agent on State Farm's website. (Nall Depo., p. 64, L. 18-22). The applications for insurance which Nall uses have "State Farm" on the top of the page. (Nall Depo., p. 66, L. 15-22). Nall has to have approval by State Farm if he wants to offer or sell policies for other insurers. (Nall Depo., p. 65, L. 23 to p. 66, L. 3). When a telephone call comes to his office, the phone is answered "State Farm Insurance." (Nall Depo., p. 67, L. 2-4). Nall uses the State Farm "Good Neighbor Service" that provides connection to a State Farm representative twenty-four (24) hours per day, seven (7) days per week, three hundred, sixty-five (365) days-per-year. (Nall Depo., pp. 71, L. 23 to p. 72, L. 13). Nall accepts payments on behalf of State Farm. (Nall Depo., p. 74, L. 13 to p. 75, L. 2). Nall binds property and casualty policies for State Farm. (Nall Depo., p. 75, L. 3-10). Nall has advertised on radio with advertisements that are approved by

State Farm. (Nall Depo., p. 76, L. 10-16). Nall admitted that he was educated, trained, and experienced in insurance, and that he has more knowledge than an average person on the street with respect to insurance issues. (Nall Depo., p. 53, L. 4-11).

After Nall became a State Farm agent, he contacted the Joneses to review their State Farm insurance policy. (Jacob Jones Depo., p. 63, L. 8-17). Nall asked the Joneses to come in to his office at three o'clock on a work day. (Jacob Jones Depo., p. 63, L. 10-17). Mr. Jones called Nall's office to reschedule, because he was unable to meet with Mr. Nall during the work day. (Jacob Jones Depo., p. 63, L. 18-23). Nall never contacted Jones to reschedule. (J. Jones Depo., p. 64, L. 3-6).

### C. *The Joneses suffered damage proximately caused by the Defendants' negligence.*

On or about July 28, 2004, the Jones' residence was destroyed by fire. (Jones Affidavit). At the time of the fire, the Joneses had resided in said home for over thirty (30) years. (Jacob Jones Depo., p. 20, L. 9-11)(Peggy Jones Depo., p. 11, L. 16 to p. 12, L. 3). As a result of the fire, the Joneses lost invaluable and irreplaceable memorabilia and personal items. (Jones Affidavit). On the same July 28, 2004 date, the Joneses contacted their current State Farm agent, Ron Nall, to notify him about the fire. (Nall Depo., p. 92, L. 19). At the time of the fire, Ron Nall was the Jones' State Farm agent of record and servicing agent. (Nall Depo., p. 171, L. 6-13). Nall received a renewal commission on the homeowners' policy renewals for the Joneses from the time he became an agent through the date of the fire. (Nall Depo., p. 142, L. 13 to p. 143, L. 10, p. 171, L. 14-17). According to Nall, State Farm uses a computer program, named "Exact Value," to determine the replacement cost of a home. (Nall Depo., p. 50, L. 1-2). The State Farm insurance agent will input certain information, including the square footage of the house, in order for the computer program to determine what the replacement cost of the home should be. (Nall Depo., p. 49, L. 17 to p. 50, L. 2). There are no local variables within the computer program provided by State Farm to compute

replacement cost. (Nall Depo., p. 123, L. 14-16). The value provided by the Exact Value computer program, if approved by State Farm, becomes the replacement cost. (Nall Depo., p. 146, L. 9-17). Nall, himself, relies on the values and cost factor/multipliers computed by the State Farm Exact Value program. (Nall Depo., p. 121, L. 15 to p. 128, L. 5).

Pursuant to State Farm's request, following the fire which totally destroyed the Jones' home, Mr. Jones provided State Farm with two estimates of the cost to replace the home. (Jacob Jones Depo., p. 10, L. 7-12; p. 113, L. 4 to p. 114, L. 2). Neither Mr. Jones nor Mrs. Jones ever received copies of the estimates. (Jacob Jones Depo., p. 18, L. 14-16). Rather, Mr. Jones had both estimates sent directly to State Farm. (Jacob Jones Depo., p. 10, L. 19-23). According to State Farm's attorney of record, the first estimate to rebuild the Jones' home was for $237,840.00, and the second estimate was for $213,456.00 (average estimate of $225,648.00). (Jacob Jones Depo., p.10, L. 13-18). The Joneses were told by the State Farm claims adjuster that State Farm would take the two estimates provided by the Joneses and average them together to determine the replacement cost of the Jones' home. (Jacob Jones Depo., p. 111, L. 10 to p. 113, L. 20). However, based on King's incorrect measurement of the Jones' home as 2128 square feet, State Farm only paid to the Joneses an amount of $116,856.00, plus an additional $23,371.20 under the State Farm Option ID plan, for a total of $140,227.20. (Jacob Jones Depo., p. 111, L. 17-20)(King Depo., p. 79, L. 11-18).

III.    **THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' NEGLIGENCE CLAIMS AGAINST STATE FARM.**

There are genuine issues of material fact as to Defendants' negligent mis-measurement of the Plaintiffs' home and negligent miscalculation of the amount of casualty insurance required to properly insure the Plaintiffs' home. Indeed, the Defendants are not entitled to judgment on the negligence claims as a matter of law. "Summary judgment is rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised." Yarbrough v. Springhill Memorial Hosp., 545 So. 2d 32, 34 (Ala.

1989).  In order to defeat a motion for a summary judgment on a negligence claim, the plaintiffs must simply present substantial evidence of the following elements of a negligence claim: (1) that the defendant owed them a duty, (2) that the duty was breached, and (3) that the breach proximately caused damage or injury. <u>Key v. Compass Bank, Inc.</u>, 826 So. 2d 159 (Ala. Civ. App. 2001)(citing <u>Crowne Invs., Inc. v. Bryant</u>, 638 So. 2d 873 (Ala. 1994)).

**A.**  ***There is substantial evidence  as to each of the elements of negligence, as well as genuine issues of material fact as to whether Defendants negligently breached their duty to procure insurance for the Plaintiffs by mis-measuring the square footage of the Plaintiffs home.***

Under Alabama law, "the duty of an insurance agent or broker requires that he, when undertaking to procure insurance for a client, *exercise reasonable skill, care, and diligence in effecting insurance* and that an insurance agent or broker will not unjustifiably or negligently fail to do so, without giving timely notice of inability to secure insurance, lest he become liable for any damage resulting therefrom."  <u>Waldon v. Commercial Bank</u>, 281 So.2d 279, 282 (Ala. Civ. App. 1973)(emphasis added).  Here, State Farm, by and through its agents Mark King and Ron Nall, had a duty to exercise reasonable skill, care, and diligence in measuring and calculating the square footage of the Jones' home in order to procure and issue the appropriate policy of insurance for the Jones' home.  In fact, State Farm's policies and procedures required State Farm, by and through its agents Mark King and Ron Nall, to accurately measure and compute the square footage of the Jones' home. Not only did State Farm, by and through its agents King and Nall, have a duty to accurately measure and compute the square footage of the Jones' home, but, according to his own testimony, State Farm's agent King actually assumed these duties and attempt to complete these duties throughout his tenure as the Jones' agent of record.  Unfortunately, King and State Farm breached these duties.  State Farm, by and through its agent King, negligently mis-measured and miscalculated the square footage of the Jones' home.

State Farm, by and through its agent King, breached his duty to exercise reasonable skill, care, and diligence in measuring and calculating the square footage of the Jones' home. The disputed facts show that the last addition made to the house was in approximately 1989 or 1990. King admits conducting a mandatory inspection of the Jones' home in 1994. According to State Farm documents obtained by Mr. Jones from Ron Nall's office on September 1, 2004, Mark King re-inspected the Jones' home in 1997. In 1994 and 1997, Mark King incorrectly measured the home. He calculated the total square footage of the Jones' home to be 2128 square feet in 1994 and 1997. In fact, in 1994 and 1997, the Jones' home contained approximately 2840 square feet[1]. Both State Farm agents, King and Nall, admitted that State Farm based its replacement cost on the square footage amount of the home. If the square footage of the home is miscalculated, then it follows that the replacement cost of the home will be miscalculated. State Farm used Mark King's incorrect measurement of the Jones' home to calculate the amount of insurance coverage needed to replace the Jones' home in case of casualty damage.

The breach of the duty to accurately measure and compute the square footage of the Jones' home proximately caused the Joneses damage. According to King, the measurement and calculation of the square footage of the home as provided by King and State Farm is the primary factor used to determine the replacement value of the home. Specifically, the total square footage of the home is multiplied by a cost factor of price per square foot to determine the replacement value of the home. Consequently, King's negligent miscalculation of square footage proximately caused King to undervalue the replacement value of the home by approximately twenty-six percent (26%). Based upon King's incorrect measurement and/or miscalculation of the square footage of the Jones' home, State Farm determined that the replacement value of the Jones' home was

---

[1] This is twenty-six percent (26%) more than the square footage of the Jones' home as negligently measured by Mark King.

$116,856.00.   Relying on King's calculation of square footage and replacement cost, as King admitted the Joneses should have relied, the Joneses insured their house for the amount determined by King.  This amount reflects that, according to State Farm's mis-measurement of the home as 2128 square feet, the Jones' home would cost $54.91 per square foot.  Utilizing this same cost per square foot calculation, if King had underlined correctly measured and calculated the square footage of the Jones' home at 2840 square feet, then the replacement cost of the house which would have been provided by King to the Joneses would have been approximately $155,944.40.[2]

According to King, Nall, and State Farm, the replacement cost is due to be increased by the Option ID amount of twenty percent (20%).  As noted above, this Option ID amount is routinely provided by State Farm to the insured, at no cost to the insured.  In fact, under Option ID, State Farm paid to the Joneses an additional twenty percent (20%) of the miscalculated replacement value.  State Farm paid the Joneses an additional $23,371.20, which was twenty percent (20%) of the $116,856.00 replacement value calculated by State Farm, for a total of $140,227.20.

However, when the corrected replacement value of the Jones' home ($155,944.40), based on the actual square footage of the Jones' home and using the cost per square foot of $54.91 used by State Farm, is increased by the Option ID amount of twenty percent (20%), or $31,188.88, then the Joneses should have been paid a total amount of $187,133.28.  The amount that the Joneses were actually paid by State Farm ($140,227.20) was $46,906.08 **less** than the amount the Joneses should have been paid if King had correctly measured and calculated the square footage of the Jones' home.

   B.     *There is substantial evidence and genuine issues of material fact as to State Farm's breach of its duty to properly procure and issue insurance for the Plaintiffs by utilizing and relying on an improper cost factor in determining the replacement value of the Plaintiffs' home.*

_____

[2] This is $39,095.92 more than the amount of insurance based upon King's miscalculation.

As noted above, Defendants' had a duty to exercise reasonable skill, care, and diligence in effecting casualty insurance for the Joneses. State Farm, by and through its agents, further breached its duty to the Joneses by negligently providing an improper factor/multiplier to determine the replacement cost per square foot of the home in procuring insurance for the Joneses. State Farm provided King and Nall with an incorrect price per square foot factor of $54.91, with which to multiply by the square footage of the home to determine the replacement value of the Jones' home.

Following the fire which totally destroyed the Jones' home, pursuant to State Farm's request and as provided under the policy, Mr. Jones provided State Farm with two independent estimates from local contractors of the cost to replace their home. The two estimates provided to State Farm representing the cost to rebuild the Jones' home were in the amounts of $237,840.00[3] and $213,456.00[4]. Thus, even if King's measurement of the square footage of the Jones' home as 2128 square feet <u>was</u> accurate, the use of $54.91 per square foot as the cost factor/multiplier was still wholly inadequate and grossly negligent.

Specifically, even if King's measurement of 2128 square feet had been accurate, the cost per square foot to replace the Jones' home was $111.76 for the high replacement cost estimate, and $100.30 for the low replacement cost estimate. Even when using the correct square footage, the cost per square foot of $83.75 (using the high replacement cost estimate) and $75.16 (using the low replacement cost estimate) are thirty-five percent (35%) higher and twenty-seven percent (27%) higher, respectively, than the cost factor of $54.91 negligently provided by State Farm to King and Nall and utilized in determining the replacement cost of the Jones' home. As King testified, as a State Farm agent, he was <u>required</u> to use the cost factor provided by State Farm. Both Mark King and Ron Nall testified that they were required to rely on the cost factor provided by State Farm.

---

[3] Scott Dutton Construction provided this estimate of the replacement cost of the Jones' home.
[4] Wyatt Sasser Construction provided this estimate of the replacement cost of the Jones' home.

State Farm, via its agents, breached its duty to utilize a reasonable cost factor to determine the replacement value of the Jones' home.  The State Farm agents were negligent in using the improper cost factor provided by State Farm to determine the replacement value of the Jones' home. These breaches caused the Plaintiffs to suffer significant damage. Even if the square footage of the Jones' home had been properly measured at 2840 square feet, the cost factor of $54.91 used by State Farm was wholly improper and inaccurate based on the two replacement cost estimates provided to State Farm.  Even when using the lower estimate of $213,456.00 provided to State Farm and the actual square footage of the Jones' home, the cost factor should have been at least $75.16, not $54.91[5]. This caused the Joneses to suffer damages, at a minimum, in an amount of $57,510.00.

Mr. and Mrs. Jones are not unreasonable people.  Mr. Jones testified that he is not seeking the actual cost that was required to actually rebuild his home.[6]  Rather, Mr. Jones believes that State Farm is and should be liable to pay the difference between what State Farm paid to the Joneses ($140,227.20) and the average of the two (2) estimates received by State farm as the replacement value of the Jones' home ($225,648.00).  In short, the Joneses seek $85,420.80 from State Farm.

III.    **THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE NEGLIGENCE CLAIM IS NOT WELL TAKEN AND DUE TO BE DENIED.**

A.  *There are genuine issues of material fact as to the Plaintiffs' negligence claims.*

Summary judgment is due to be denied as to the Plaintiffs' negligence claims because there are genuine issues of material fact.  State Farm first argues that it did not breach its duty to properly measure and calculate the square footage of the Plaintiffs' home.  State Farm attempts to obfuscate this issue by arguing that it was the Jones' duty, not the duty of State Farm, to measure the home, calculate the square footage, and determine the replacement value of their home.  Why should Mr. Jones do this, when his agent admits that it was the agent's job to do so?  State Farm's argument is

---

[5] This is a difference of $20.25 per square foot.
[6] The actual cost to rebuild the Jones' home was approximately $327,000.00. (Jacob Jones Depo., p. 94, L. 14 to p. 95, L. 4).

duly without merit. State Farm's own agent testified that it was his responsibility to measure the home, calculate the square footage, and utilize State Farm's equation and computer program to determine the replacement cost of the Jones' home. State Farm should not be able to deny that State Farm and its agents had a duty to the insureds, when State Farm's own agent testified that State Farm and its agents had such a duty. Indeed, King, himself, expected to be able to rely on State Farm. King expected his customers, as State Farm insureds, to be able to rely on him. State Farm's argument that the Joneses should not have relied on King's measurements, calculations, and determinations of replacement value contradicts the expectations, beliefs, and representations of State Farm's own agent.

Next, State Farm's argument that the Jones' were in the best position to know what additions had been made and the amount of square footage that had been added to their home is without merit. State Farm never provided the Joneses with any information concerning the square footage or the cost factors used to determine the replacement value of their home. Specifically, the testimony is undisputed that State Farm did not provide any information, whatsoever, to the Joneses on any policy, invoice, or declarations that reflected State Farm's inaccurate square footage of the Jones' home. It is beyond the pale for State Farm to now assert that the Joneses had a duty to know or were required to double-check their agent's ability to properly measure and calculate the square footage of their home. Moreover, the Joneses had absolutely no way of knowing or changing the cost factor provided by State Farm to its agents. State Farm required its agents to use State Farm's factor in determining the replacement value of their home. Indeed, King testified that he was required to use the cost factor provided by State Farm. He testified that he was not allowed to insure a home at a value above the value calculated utilizing State Farm's cost factor.

Further, State Farm's reliance upon Lewis v. Roberts, 630 So.2d 355, 357 (Ala. 1993), is misplaced. In that case, the Alabama Supreme Court determined that "viewing the evidence in a

light most favorable to the [Plaintiffs], however, we find evidence from which a jury could infer that [Defendant] undertook to procure higher levels of uninsured motorist coverage for all of the [Plaintiffs'] insured vehicles, and then unjustifiably or negligently failed to do so." Id. at 357. Clearly, the Joneses were counting on King to properly measure their home and calculate the necessary amount of insurance to fully insure their home.  King's own testimony shows that he undertook this duty by measuring the Jones' home, calculating the square footage of the Plaintiffs' home, determining the replacement cost, and procuring the proper amount of insurance to satisfy this amount.  In fact, the undisputed facts show that King, in an effort to procure insurance, mis-measured and miscalculated the Jones' home on multiple occasions.  Thus, under Lewis, it now becomes a *question of fact for the jury to decide* whether the evidence shows that King unjustifiably or negligently failed to procure insurance for the Plaintiffs.

Additionally, in Defendants' Motion for Summary Judgment, Defendants assert that "in order for there to be a negligent failure to procure, there has to be an agreement between the agent and the policyholder as to the insurance the policyholder wants and then failure by the agent to procure that coverage after the policyholder has provided to the agent everything the agent needs to procure coverage." (Def. MSJ, p. 29).  Here, there is a genuine issue of material fact as to the nature and the amount of the insurance coverage on the Jones' home.  Mr. Jones testified that he asked State Farm, by and through King, to insure his home for the replacement value, and King lead Mr. Jones to believe that he had enough insurance to cover the replacement value of his home.  While King may not remember this specific request, King and State Farm, through King's actions, undertook the duty to determine the amount necessary to replace their home.  State Farm asserts that there is no evidence that the Joneses applied for or requested insurance that would cover the replacement cost of their home, or that King stated that the Joneses had replacement cost coverage for their home.  Unfortunately for State Farm, the evidence overwhelmingly reflects that the Joneses

asked for coverage to replace their home, relied upon King and State Farm to provide the amount necessary to rebuild their home, and that King and State Farm assumed and undertook the duty to determine this replacement cost value and insure the home for that amount.  Further, any argument by the Defendants that State Farm advised the Joneses that the value of the policy was only an "estimate" of replacement cost is disingenuous in that State Farm's own agent testified that he, himself, relied upon this value of replacement cost, and more importantly he expected his clients, such as the Joneses, to do the same.  State Farm cannot overcome the substantial evidence and genuine issues of material fact that even if King had measured and computed the square footage correctly, the cost factor provided by State Farm to King, which was used to determine the replacement value of the Jones' home, was wholly inaccurate.

Finally, State Farm's argument that the Joneses should have known the value of their home from the property appraisals performed by the tax assessor's office each year is without merit.  It is common knowledge that the tax assessed value of a home has little if any correlation to the actual value of a home.  The tax assessed value of the Jones' home in 2004 was merely $106,100.00. (Exhibit B).  Both Parties would agree that the value of the Jones' home exceeded the tax assessed value of the home.

**B.**      ***Defendants' argument as to the Plaintiffs' alleged contributory negligence is a question of fact to be decided by the jury.***

Relying upon Kanellis v. Pacific Indemn. Co., 917 So.2d 149 (Ala. Civ. App. 2005), Defendants assert that Plaintiffs' negligence claims are barred as a matter of law because the Joneses did not read the insurance policy. However, the question of the existence of contributory negligence is normally one for the jury to decide.  Scott v. ABF Freight Systems, Inc., 306 F.Supp.2d 1169, 1175 (M. D. Ala. 2004).  Defendant's reliance upon Kanellis is misplaced.  In Kanellis, the Court held that the Plaintiffs were contributory negligent because they failed to read the insurance policy.

Here, the issue is not whether the Joneses read the policy, but rather whether State Farm, by and through its agents, grossly mis-measured the square footage of the Jones' home and miscalculated the cost to replace the Jones' home, by using an incorrect factor/multiplier of cost per square foot to rebuild the Jones' home.  Mr. Jones testified that he read the policy, but even King testified that it was so difficult to read you would need a "Philadelphia lawyer" to understand the policy. (King Depo., p. 64, L. 18). The reading of the policy by the Joneses was not and cannot be the proximate cause of the damage which the Joneses suffered.  Even if the Jones' alleged failure to read the policy <u>was</u> the proximate cause of the damage suffered by the Joneses, this issue of proximate cause is one of fact for the jury to decide.

IV.    <u>CONCLUSION</u>

The Defendants' Motion for Summary Judgment is due to be denied as to the Plaintiffs' negligence claims.  First, Plaintiffs have provided substantial evidence as to each of the elements of negligence.  Second, there are issues of genuine fact discussed above which prevent the Defendants from being entitled to judgment as a matter of law.  As discussed above, Defendants had a duty to exercise reasonable skill, care, and diligence in effecting insurance for the Plaintiffs.  State Farm, by and through its general agent King[7], breached its duty to the Joneses by incorrectly measuring and calculating the square footage of the Jones' home after undertaking the duty to do so.  Mark King measured the square footage of the home as 2128 square feet, when, in fact, the home was actually 2840 square feet, a difference of over 700 square feet and twenty-five percent (25%).  This breach caused the Plaintiffs to suffer significant damages.

Next, State Farm was negligent because State Farm provided the factor/multiplier used by State Farm was wholly inaccurate when compared with the actual estimated cost per square foot of

---

[7] State Farm is liable for the negligence of its general agent, Mark King.  State Farm's negligence during King's agency remains throughout the general agency of Nall because Nall did nothing to correct or even address the prior negligent acts.  Additionally, Nall could also be liable for the acts of King under a theory of successor liability, as Nall "was the mere continuation of the operations of the transferor." See generally <u>Claredy v. Sanders</u>, 551 So. 2d 1057, 1060 (Ala. 1989) (quoting <u>Andrews v. John E. Smith Sons Co.</u>, 369 So. 2d 781 (Ala. 1979)).

the Jones' home.  The two estimates provided to State Farm representing the cost to rebuild the Jones' home were in the amounts of $237,840.00 and $213,456.00.   Regardless of whether State Farm's calculation of the square footage of the Jones' home as 2128 <u>was</u> correct, the cost per square foot ($54.91) factor provided by State Farm to King and used by King was incorrect.  Stated otherwise, in order to reflect the actual total cost to rebuild the Jones' home, King would have had to multiply the correct square footage (2840) by at least $75.16 per square in order to equal the lower estimate of $213,456.00, and at least $83.74 per square foot in order to equal the higher estimate of $237,840.00.   In sum, State Farm's negligence, by and through its agents and its improper cost factor, proximately caused the Jones to suffer at least $57,510.00 in damages.

Respectfully submitted this the 7th day of March, 2007.

_/s/ Bryan P. Winter_____
Bryan P. Winter (WIN-028)
Adcox Winter, LLP
611 Helen Keller Boulevard
Tuscaloosa, Alabama 35404
Phone: (205) 553-5353
Fax: (205) 553-5593
E-mail: bwinter@adcoxwinter.com

**Certificate of Service**

I hereby certify that on March 7, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael S. Jackson
Michael B. Beers
BEERS, ANDERSON, JACKSON,
PATTY & VAN HEEST, P.C.
P.O. Box 1988
Montgomery, Alabama 36102-1988

Marcus Jones, Esq.
LAW OFFICE OF MARCUS JONES
2416 Walking Fern Lane
Hoover, Alabama 35244


    /s/ Bryan P. Winter
Bryan P. Winter
Attorney for Plaintiffs