IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JACOB JONES, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-cv-1119-WKW |
| | ) | [wo] |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jacob and Peggy Jones (collectively the "Joneses") bring this action against defendants State Farm Fire and Casualty Company ("State Farm"), arising out of a dispute over the amount of coverage State Farm owes the Joneses under their homeowners policy for a fire that destroyed their home.  In their complaint, the Joneses also brought claims against Ron Nall ("Nall"), their State Farm agent at the time of the fire.  On March 9, 2007, the court granted Nall's Motion to Dismiss (Doc. #41), leaving State Farm as the only remaining defendant.  This case is presently before the court on State Farm's Motion for Summary Judgment (Doc. #35).  For reasons to be discussed, the motion for summary judgment is due to be granted.

**I.  FACTS AND PROCEDURAL HISTORY**

The Joneses built their home in 1971 in Covington County, Alabama.  (Jacob Jones Dep. 20:9-11.)  They purchased homeowners insurance from State Farm, although the parties disagree about when the Joneses first purchased this policy.  The Joneses claim they first

bought coverage from State Farm agent Mark King ("King") when they finished building their house.  (*Id.* 20:16-20.)  State Farm claims its records show that King became an agent in 1977 and that the Joneses were first issued a homeowner policy in 1981.  (Lovell Aff. ¶ 6; King Dep. 8:6-10.)  The parties also disagree about what type of coverage the Joneses purchased when the policy was issued.  Jacob Jones testified that when he purchased his policy he bought replacement cost coverage.[1]  (Jacob Jones Dep. 25:8-23.)  King testified that State Farm did not offer replacement cost coverage when he sold the Joneses their first insurance policy.  (King Dep. 23:3-11.)

The policy State Farm issued the Joneses automatically renewed on the anniversary date of the policy.  The policyholder could cancel it at any time, and State Farm could choose not to renew the policy at the end of the term or to cancel mid-term pursuant to the policy. (Lovell Aff. ¶ 9.)  Each year prior to the anniversary of the policy, State Farm sent a renewal certificate to the Joneses. The amount of coverage and premium increased each year to reflect inflation.  (*Id.* ¶ 10.)

From 1981 to 1997, Jacob Jones had occasional conversations with King regarding his insurance coverage.  During this period, the Joneses remodeled and renovated their home several times, adding additional square footage, and Jacob Jones testified that he told King of these changes when he saw him around town.  Jacob Jones claimed that King in these

---

[1]  The term "replacement cost coverage" as used here, and through the opinion, refers to insurance which covers the whole cost to replace the home after a loss without a policy limit.  An alternative type of insurance policy is "estimated replacement cost coverage," which, in the event of a loss, provides coverage to replace the loss up to a stated limit.

conversations confirmed to him that he had replacement cost coverage and was "covered."

(Jacob Jones Dep. 35:8-36:3, 37:4-14.)  King does not recall selling the Joneses replacement

cost coverage or talking about such coverage with Jacob Jones.  (King Dep. 23:15-21.)

On October 3, 1998, the Joneses' renewal date, State Farm issued the Joneses a new

policy which removed replacement cost coverage and instead provided estimated

replacement cost coverage.  State Farm changed the Joneses' policy as part of a larger

program which affected other policyholders as well.  (Lovell Aff. ¶ 11.)  Prior to the renewal

date, State Farm sent the Joneses a letter, explaining there would be changes to the policy and

instructing them to contact King if they had any questions about their coverage. (*Id.* ¶  12.)

When State Farm sent the Joneses their new policy, it included a notice stating that Joneses

no longer had replacement cost coverage but instead were insured only up to a specific

amount:

> One very important change in your policy is the elimination of Guaranteed
> Replacement Cost and Guaranteed Extra Coverage . . . . These coverages are
> eliminated.  Your policy now has a stated limit of liability under Coverage A
> that reflects the maximum that will be paid in case of loss . . . . **The policy no
> longer provides a guarantee to replace your home regardless of the cost**.

(Defs.' Ex. E (emphasis added).)  Jacob Jones does not remember receiving this notice, but

has no reason to doubt it was sent to him.  (Jacob Jones Dep. 83:12-17.)  The Joneses also

received Increased Dwelling ("Option ID") coverage, which provided additional dwelling

coverage.  (Lovell Aff. ¶ 14.)

State Farm sent the Joneses renewal certificates in subsequent years, which explained

that they did not have replacement cost coverage. Each certificate contained the following disclaimer:

> The State Farm replacement cost is an estimated replacement cost based on general information about your home. It is developed from models that use cost of construction materials and labor rates for like homes in the area. The actual cost to replace your home may be significantly different. **State Farm does not guarantee that this figure will represent the actual cost to replace your home.** You are responsible for selecting the appropriate amount of coverage and you may obtain an appraisal or contractor estimate which State Farm will consider and accept, if reasonable. Higher coverage amounts may be selected and will result in higher premiums.

(Defs.' Ex. H-K (emphasis added).)[2]  These certificates explicitly stated that the Joneses' coverage was subject to a stated limit, meaning they did not have actual replacement cost coverage, and notified them that the insurance they purchased may not cover an entire loss. The certificates also explained how the Joneses could contest the amount of their insurance coverage if they believed that State Farm's estimate was too low. Additionally, each of the renewal certificates stated on its face the amount of coverage State Farm was providing to the Joneses. (*Id.*)

In 2001, King retired, and Nall became the Joneses' State Farm agent. Both Jacob and Peggy Jones testified they did not have any conversations with Nall about their insurance coverage prior to the 2004 fire. (Jacob Jones Dep. 63:5-23; Peggy Jones Dep. 18:18-23.)

---

[2]  State Farm was unable to produce the 1999 renewal certificate. State Farm attributes its absence to its record-keeping policies. (Defs.' Mot. Summ. J. 11.) State Farm concedes it cannot definitively state the 1999 Renewal Certificate contained this language. (*Id.* 21.) The court, accordingly, does not conclude the Joneses received a renewal certificate containing this language in 1999. The evidence does show that the Joneses received renewal certificates in 2000, 2001, 2002, and 2003 that contained this language. (Defs.' Ex. H-K.)

Nall does not remember having any discussions with the Joneses about their insurance coverage.  (Nall Dep. 79:6-80:9.)

On July 28, 2004, the Joneses' home burned, and they expected State Farm to pay what it would cost to rebuild the home.  (Jacob Jones Dep. 127:14-128:6.)  Upon instructions from State Farm, the Joneses obtained estimates from contractors for $210,456 and $237,840 to rebuild the home.  (*Id.* 112:20-113:3.)  The policy in place when they suffered this loss limited State Farm's liability "to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property."  (Defs.' Ex. G.) Their most recent renewal certificate provided for $108,300 in dwelling coverage and an additional $21,660 in coverage through Option ID.  (Defs.' Ex. K.)  State Farm refused to pay the full amount of the cost to replace the Joneses' house because the cost exceeded policy limits.

The Joneses claim State Farm incorrectly calculated the square footage of their house, resulting in State Farm underestimating the replacement value.  State Farm uses square footage as one factor, among others, in calculating estimated replacement cost.  (Nall Dep. 49:14-23.)  On September 1, 2004, Jacob Jones went to Nall's office to discuss the claim with him, but Nall was unavailable.  Nall's secretary printed out some documents for Jones related to his insurance coverage, including a printout of a computer screen displaying his "fire plan status."  (Lovell Aff. Ex. G.)  This document showed State Farm had recorded the Joneses' home as having 2128 square feet and that an agent had conducted a reinspection on

5

March 11, 1997. (*Id.*)  However, Jacob Jones testified that his home had contained 2840 square feet since an addition in 1990 and that when it was originally constructed it had at least 2400 square feet.  (Jacob Jones Dep. 22:4-13; Jacob Jones Aff.)

The parties disagree on when State Farm last measured the Joneses' home but agree that it occurred no later than 1997.  State Farm claims it is impossible to establish when 2128 square feet was entered into its system.  (Lovell Aff. ¶ 22.)   The Joneses claim their home was measured in 1997 because King came after they remodeled it in that year and because State Farm records show their house was reinspected by State Farm on March 11, 1997. (*See* Lovell Aff. Ex. G.)   State Farm contends the 1997 inspection was a quality inspection performed at the request of the Birmingham underwriting office and that the agent did not measure the square footage of the house during the inspection.  (Lovell Aff. ¶ 21.)  King remembers measuring the house in 1994 after Hurricane Opal at State Farm's request but does not remember measuring it after 1994.  (King Dep. 11:12-23; 12:3-14.)

Jacob Jones testified that he spoke with King about his insurance coverage in 1997 after King measured his home.  Jones claimed they discussed the specific amount of coverage the Joneses had under the policy.   Jones testified he accepted King's calculation of his coverage "based upon his – what I call or thought was expertise." (Jacob Jones Dep. 34:21-23.)  Jones explained that while he and King discussed a specific amount of coverage, he believed he had full replacement coverage and that this policy limit would only apply if his house was partially damaged but did not need full replacement.  (*Id.* 101:2-102:4.)

6

After the fire State Farm paid the Joneses $140,227 to cover replacement costs based upon the policy limits.[3]  They now seek $53,918.20 in this action, representing the difference between the average of the estimates they received to replace their home and what State Farm has already paid them.  (*Id.* 112:6-19.)

The Joneses filed a complaint in the Circuit Court of Covington County, Alabama, on September 28, 2005.  On November 22, 2005, the defendants removed the case to federal court.  On February 20, 2007, the defendants filed this motion for summary judgment, and it is fully briefed and ripe for resolution.

## II.  JURISDICTION AND VENUE

The court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship).  The parties do not contest personal jurisdiction or venue, and the court finds allegations sufficient to support both.

## III.  STANDARD OF REVIEW

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers

---

[3]  Both parties agree State Farm owed the Joneses at least $140,227.20 under the policy, with $116,856.00 in dwelling coverage and $23,371.20 through Option ID.  (Defs.' Mot. for Summ. J. 13; Pls.' Resp. Mot. Summ. J. 13.)  However, the renewal certificate provided that State Farm was obligated to provide the Joneses with $129,960 of coverage.  (Defs.' Ex. F.)  The parties do not provide documentation or explanation about why the level of coverage changed.

to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324.   To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v.  Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if the "jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (citation omitted).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

# IV. DISCUSSION

The Joneses allege State Farm is negligent because it failed to issue and failed to procure insurance for the Joneses.[4]  State Farm argues summary judgment is appropriate because it provided the Joneses with the insurance coverage required under the policy.  The court finds that State Farm did not breach a duty, but even if it did the Joneses are barred from recovering as matter of law because of their contributory negligence.

The Joneses raise two negligence claims against State Farm: that it was negligent in failing to issue insurance and negligent in procuring insurance.  They do not differentiate or distinguish between these two causes of action and present one legal theory for both claims, which is that while State Farm procured and issued them insurance it was negligent in not providing them with enough coverage.  In their brief, the Joneses cite only cases analyzing the failure to procure insurance.[5]  Because the Joneses do not treat these two claims as distinct and offer the court no guidance about how to distinguish them, the court will analyze these claims together under a negligent failure to procure theory.

---

[4]  The Joneses originally included claims for breach of contract, bad faith, fraud, wanton failure to issue insurance, and wanton failure to procure insurance.  In their response to the motion for summary judgment, they conceded that State Farm is entitled to summary judgment on those claims.  (Pls.' Resp. Br. Mot. Summ. J. 1.)  These claims against State Farm are due to be dismissed.

[5]  The court, in its own research, found only a few Alabama cases mentioning the negligent failure to issue an insurance policy and only one case, from 1932, analyzing the negligent failure to issue. *See Smith v. Equifax Servs., Inc.*, 537 So. 2d 463, 464 (Ala. 1988) (finding beneficiary does not have a cause of action for negligent failure to issue); *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Haynes*, 497 So. 2d 82, 82 (Ala. 1986) (affirming judgment for a negligent failure to issue without analyzing this issue); *Sovereign Camp, W.O.W. v. Rounsley*, 139 So. 90, 91 (Ala. 1932) (analyzing the negligent failure to procure).

**A.    Elements**

A claim that an insurance company negligently failed to procure an insurance policy has the same four elements as an ordinary negligence action: duty, breach, proximate cause, and injury. *Kanellis v. Pac. Indem. Co.*, 917 So. 2d 149, 155 (Ala. Civ. App. 2005). In this case, the issue is whether State Farm breached the duty it owed to the Joneses by failing to procure insurance. The duty is breached "[w]hen an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client and unjustifiably or negligently fails to do so." *Lewis v. Roberts*, 630 So. 2d 355, 357 (Ala. 1993). This duty requires an insurance agent to act with a requisite level of skill and care: "[o]nce the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage." *Id.* In deciding if there was a negligent failure to procure insurance the court first must analyze the agreement the parties reached regarding insurance coverage and then determine if the insurer used reasonable care in providing that insurance coverage.

The Joneses argue State Farm was negligent in failing to provide them with full replacement cost coverage or, in the alternative, in not providing them with enough estimated replacement cost coverage. Taking the facts in the light most favorable to the non-movants, the court finds the parties did not agree to replacement cost coverage but instead agreed to the level of coverage that was stated on the renewal certificate. State Farm provided this amount of insurance coverage to the Joneses pursuant to the agreement.

10

Under Alabama law, insureds have a duty to read their insurance policies. *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997). Courts impute knowledge of insurance policy terms to an individual "who is competent in intelligence and background to understand insurance policy language." *Allstate Ins. Co. v. Ware*, 824 So. 2d 739, 745 (Ala. 2002).[6] An insurer is responsible for notifying the insureds if the renewal policy's terms are different from the original policy. *Woodlawn Fraternal Lodge No. 525 v. Commercial Union Ins. Co.*, 510 So. 2d 162, 164 (Ala. 1987). The notice "must be specific, complete, not misleading, and call to the insured's attention any reductions in the scope of policy coverage." *Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1231 (S.D. Ala. 1999).

Since 1998, the Joneses have not had replacement cost coverage insurance.[7] In October 1998, State Farm modified the terms of the Joneses' insurance policy and unequivocally removed replacement cost coverage: "[t]hese coverages are eliminated. Your policy now has a stated limit of liability under Coverage A that reflects the maximum that will be paid in case of loss . . . . The policy no longer provides a guarantee to replace your

---

[6] Insureds were not charged with knowledge of the content of a policy when the husband was 81 years old, could not read or write, and had no formal schooling, the wife was 69 years old and had never finished high school, and they had sought or obtained insurance on their own only once before. *Thompson v. United Cos. Lending Corp.*, 699 So. 2d 169, 174 (Ala. Civ. App. 1997). Here, Jacob Jones is competent to be charged with knowledge of the policy because he received an undergraduate degree from Troy State University with a major in mathematics, (Jacob Jones Dep. 7:9-14) is a Manager of Finance and Accounting at the Alabama Electric Cooperative, (*Id.* 8:7) and was actively involved with his former agent regarding his insurance policy.

[7] The parties disagree about whether State Farm was obligated to provide Jones with replacement cost coverage prior to 1998, but resolution of this factual dispute is not relevant to the issues presented. Even if the Joneses had replacement cost coverage prior to 1998, the terms of the policy changed in 1998.

home regardless of the cost." (Defs.' Ex. E.) This notice also stated that the new policy replaced the terms of the previous policy. (Lovell Aff. ¶ 13.) The renewal certificate the Joneses received in 2003, which was in effect on the date of the fire, explained that they did not have replacement cost coverage: "[t]he actual cost to replace your home may be significantly different. State Farm does not guarantee this figure will represent the actual cost to replace your home." (Defs.' Ex. K.) While Jacob Jones testified that King told him in conversations between 1981 and 1997 "you're covered" when Jones asked him about the replacement cost, he has not alleged King or Nall made any such statements to him after 1998. (Jacob Jones Dep. 35:8-36:3.) State Farm used specific and complete language to call to the insured's attention that the scope of the policy had changed. *See Allen*, 59 F. Supp. 2d at 1231. The policy in place at the time of the fire did not provide for replacement cost coverage.

Each year the Joneses received a renewal certificate from State Farm indicating the amount of coverage that State Farm was obligated to provide, stating that it was the homeowners' responsibility to select the level of insurance coverage, and explaining how they could challenge the current level of coverage: "[y]ou are responsible for selecting the appropriate amount of coverage and you may obtain an appraisal or contractor estimate which State Farm will consider and accept, if reasonable." (Defs.' Ex. H-K.) The Joneses never protested or sought more coverage from State Farm. Indeed, after 1998 the Joneses did not have any conversations with State Farm or its agents about their level of coverage.

Because the parties agreed on the level of coverage provided for in the renewal certificate, State Farm is only obligated to provide the Joneses with that level of coverage.

The Joneses argue in the alternative that State Farm was negligent because it did not use reasonable care in procuring the insurance since its agent incorrectly measured the square footage of the house[8] and the multiplier used underestimated the cost per square foot.[9] An insurance company fails to act with reasonable care when it does not provide the insured with the agreed upon level of coverage. *Lewis v. Roberts*, 630 So. 2d 355, 357 (Ala. 1993). In *Lewis*, when the insured contacted his insurance agent to add a fourth car to his insurance policy, his agent suggested he increase his uninsured motorist coverage on all his cars, and the insured agreed to that change. A few months later, the insured was in an accident and discovered that the amount of uninsured motorist coverage had not been increased. *Id.* at 356. The appellate court found there was enough evidence from which a jury could infer that the insurance agent had negligently failed to procure insurance because the parties had reached an agreement on the level of insurance coverage but the insurance company did not provide that level of coverage. *Id.* at 357.

Even if State Farm used the wrong square footage and underestimated the cost per

---

[8] While the parties disagree on when State Farm last measured the home, the court finds this is not a material factual dispute. The parties agree the house was measured at the latest in 1997.

[9] The Joneses claim State Farm used a multiplier of $54.91 to calculate the replacement value of their home. (Pls.' Resp. Br. Mot. Summ. J. 13.) Apparently they extrapolated this multiplier by dividing State Farm's estimated replacement value of their home by the recorded square footage of their home, 2128 square feet. (*Id.*) The Joneses present no evidence that State Farm actually calculated the estimated replacement value by using this multiplier.

square foot in calculating the estimated replacement cost, it did not negligently fail to procure insurance for the Joneses. Each year State Farm sent the Joneses a declaration page, stating the level of insurance coverage to which the parties had contracted. By accepting (and paying for) that amount of coverage, the Joneses *agreed* to that amount of coverage. The Joneses do not contend that State Farm did not provide the amount of insurance as listed on the declarations page; instead, they challenge how State Farm computed the amount of insurance coverage, arguing that it was negligent in creating the terms of the insurance contract. To be liable for negligently failing to procure insurance, an insurance company must fail to provide an agreed upon level of coverage. Even if State Farm acted negligently by using the wrong square footage and underestimating the cost per square foot, this negligence occurred before the parties reached an agreement about the level of coverage and, thus, cannot form the basis for an action for negligent failure to procure insurance. This case is distinct from *Lewis* where the insurance agent's negligent act occurred after the parties reached an agreement about the level of coverage. *Lewis*, 630 So. 2d at 357. While the Joneses contend State Farm should be liable because they never knew what square footage or multiplier State Farm was using, the Joneses could have protected themselves against such miscalculations because they could have challenged the amount of coverage provided when they received their renewal certificate. Each renewal certificate  provided directions to the insureds about how to do this and warned them that the estimated replacement cost could be lower than their actual loss.

State Farm did not negligently fail to procure insurance. The parties reached an agreement about insurance coverage, and State Farm provided that level of insurance. Even if State Farm was negligent in calculating the amount of insurance coverage, its acts were not a negligent failure to procure insurance because they occurred before the parties reached an agreement about the amount of insurance.

**B.      *Contributory Negligence***

Even if State Farm did breach its duty to the Joneses, the Joneses' contributory negligence precludes recovery as a matter of law. Under Alabama law contributory negligence is a complete bar to recovery. *Hannah v. Gregg, Bland, & Berry, Inc.*, 840 So. 2d 839, 860 (Ala. 2002). While contributory negligence is normally a question for the jury, if the facts are such that all reasonable persons would reach the same conclusion, contributory negligence may be found as a matter of law. *Id.* For a defendant to prevail on a summary judgment claim that the plaintiff was contributorily negligent, he must show the plaintiff "put himself in danger's way and . . . had a conscious appreciation of the danger." *Id.*

An insured is contributorily negligent when, if he had read the policy, he would have known the limits of coverage under the policy. *Kannelis*, 917 So. 2d at 155. In *Kannelis*, owners of a Porsche insured it under a policy that covered the cost to repair or replace the vehicle but did not cover depreciation to the vehicle. *Id.* at 153. The car was involved in an accident, and the owners filed a claim seeking compensation for the diminution of value to

15

the car after it was repaired.  The insurance company refused to pay the claim because diminution of value was not covered under the policy.  *Id.* at 152.  Because the policy did not cover depreciation, the court found the car owners had "'put themselves in danger's way' and had a 'conscious appreciation of the danger' of suffering a monetary loss in the event of a collision involving the Porsche automobile resulting in diminution of the value of the Porsche."  *Id.* at 156 (quoting *Hannah*, 840 So. 2d at 860).  The owner was charged with knowledge of the terms of the policy, including the extent of coverage.

The Joneses received a policy in 1998 and renewal certificates in 2000, 2001, 2002, and 2003 informing them that they did not have replacement cost coverage, of the specific limits of their policy's coverage, and that the level of coverage might not be sufficient.  The Joneses "put [themselves] in danger's way" of suffering a loss because they are charged with knowledge of their policy and its limits.  *See Kannelis*, 917 So. 2d at 155.  Moreover, the Joneses had been actively remodeling and renovating their house over the years and were in the best position to know at least an approximate value of the home.  To their peril, they repeatedly ignored the coverage amounts stated in the renewal certificates.  They were on notice that they were underinsured at the time of the fire; they had only $129,960 in coverage for a home worth over $200,000.  Because the Joneses accepted the level of insurance coverage, they were contributorily negligent and are completely barred from recovering against State Farm for negligence.

State Farm has not breached a duty to the Joneses under its duty to procure or duty to

issue insurance to the Joneses because it provided them with the agreed upon level of insurance.  Even if State Farm did breach these duties, the contributory negligence of the Joneses is a complete bar to recovery as a matter of law.

### V.  CONCLUSION

Accordingly, it is ORDERED that the defendant's Motion for Summary Judgment (Doc. # 35) is GRANTED, and all claims are DISMISSED with prejudice.

An appropriate judgment will be entered.

DONE this 30th day of October, 2007.

      /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE